[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-11002
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 17, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00445-CV-RWS-1

MUTULU SHAKUR,

                                                            Petitioner-Appellant,

versus

WARDEN RONNIE WILEY,

                                                            Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 17, 2005)

Before ANDERSON, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

    Mutulu Shakur, a federal prisoner proceeding pro se, appeals the district

court's denial of his 28 U.S.C. § 2241 habeas corpus petition, in which he

challenged the decision of the U.S. Parole Commission ("Commission") denying

him parole and continuing his reconsideration hearing for 15 years.[1] On appeal, Shakur raises the following issues: (1) that the Commission factually erred by miscalculating his time in custody in reaching its parole decision and determining his reconsideration date; (2) that the Commission engaged in impermissible double-counting by using the same criminal conduct both to establish his parole severity guideline rating and to find an aggravating factor justifying a decision outside of the parole guidelines; (3) that the Commission violated federal regulations by relying on documents not disclosed to him in making its parole decision; and (4) that the Commission's National Appeals Board ("NAB") erred by denying Shakur nunc pro tunc credit for his reconsideration hearing to 1996 when he was allegedly initially eligible for parole.[2]

The availability of habeas relief under § 2241 presents questions of law that we review de novo. Cook v. Wiley, 208 F.3d 1314, 1317 (11th Cir. 2000). The

---

[1] We note that the Sentencing Reform Act of 1984 replaced a system of indeterminate sentences and the possibility of parole with determinate sentencing and no parole. See Walden v. U.S. Parole Comm'n, 114 F.3d 1136, 1138 (11th Cir. 1997). The Act abolished the Parole Commission, and repealed most of the pre-existing statutory framework governing parole of federal prisoners. Pub.L. 98-473, §§ 218(a)(5), 235, 98 Stat. 1837. Section 235 of the Act, however, saved the Parole Commission and the federal parole statutes for five years until November 1, 1992, during which the transition to the new system would occur. Id. § 235. The Parole Commission's existence has subsequently been extended several times, with the most recent extension continuing the Commission until November 1, 2005. 21st Century Department of Justice Appropriations Act, Pub. L. No. 107-273, § 11017(a), 116 Stat. 1758.

[2] Shakur also argues on appeal that his claims of error should be reviewed cumulatively in assessing whether the Commission abused its discretion. Because we find no error as to the individual claims, we do not address his argument as to cumulative effect.

2

Commission is vested with very broad discretion in matters of parole. Meagher v. Clark, 943 F.2d 1277, 1283 (11th Cir. 1991). "A federal court will not reverse a decision of the Commission unless it involves flagrant, unwarranted, or unauthorized action that constitutes an abuse of the Commission's discretion." Glumb v. Honsted, 891 F.2d 872, 873 (11th Cir. 1990). Indeed, "[j]udicial review of denial of parole by it is permissible only upon allegations of facts, sufficient if proved, to establish that the Board's action was arbitrary, capricious, or an abuse of discretion." Calabro v. U.S. Bd. of Parole, 525 F.2d 660, 661 (5th Cir. 1975).[3]

After thorough review of the record and careful consideration of the parties' briefs, we affirm.

The background facts are straightforward. Shakur was convicted in the United States District Court for the Southern District of New York of RICO conspiracy, bank robbery, armed bank robbery, and bank robbery killings, and was sentenced on August 2, 1988, before institution of the Sentencing Guidelines, to a 60-year term of imprisonment. The Second Circuit affirmed his conviction on direct appeal, United States v. Shakur, 888 F.2d 234 (2nd Cir. 1989), and later the

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all former Fifth Circuit decisions issued prior to the close of business on October 1, 1981.

3

district court denied a request for relief under 28 U.S.C. § 2255, Shakur v. United States, 32 F. Supp. 2d 651 (S.D.N.Y. 1999).

In 1996, Shakur sued the Bureau of Prisons ("BOP") alleging, among other things, that "he was deprived . . . of his liberty interest to an early parole hearing in February 1996" because the BOP used information that it "knew or had reason to know was false" to prevent a parole hearing from going forward. See generally Shakur v. Fed. Bureau of Prisons, No. 96-646, manuscript op. at 6 (D.D.C. Feb. 3, 1998). The United States District Court for the District of Columbia granted summary judgment to the BOP on this claim, finding that Shakur failed to allege how, after serving only ten years of a 60-year sentence, he would have qualified for an early hearing. Id. The D.C. Circuit affirmed summary judgment on appeal. See Shakur v. Federal Bureau of Prisons, No. 98-5174 (D.C. Cir. Oct. 29, 1998).

Shakur served approximately fifteen years before being considered for parole. At Shakur's initial parole hearing on July 17, 2002, he requested disclosure of BOP and Commission files. The hearing examiner granted a continuance of the hearing so Shakur could review the institutional file, noting that Shakur would be sent a letter advising him what documents were included in the Commission's "mini-file."[4]

_____

[4] The "mini-file" is another name for the Commission's file, which primarily consists of documents provided by the BOP from the institutional file.

On September 24, 2002, Shakur's parole hearing resumed. Prior to the hearing, the hearing examiner noted that while Shakur had reviewed his institutional file, he still had not received the letter about the Commission's mini-file. The hearing examiner read aloud a memorandum stating that Shakur's mini-file did not contain any documents that had not been made available to him previously, with the exception of letters supporting Shakur's parole. Shakur then indicated that he had had sufficient time to review the BOP documents and wished to proceed with the hearing.

Based on several institutional infractions and Shakur's Category Eight classification, the hearing examiner calculated an aggregate parole guideline range of "112+" months.[5] The examiner found that, given Shakur's leadership role, Shakur was accountable for his own actions as well as the actions of others in his enterprise. The examiner concluded that anything less than a 15-year reconsideration hearing date would depreciate the seriousness of the offense. The examiner further commented that Shakur "has currently served about 14 years in

---

[5]There are eight offense categories, and the parole guidelines provide upper and lower confinement limits for categories one through seven, from which the Commission may depart for good cause. See 18 U.S.C. § 4206(c). Offense Category Eight is reserved for only the most serious crimes, and therefore "no upper limits are specified due to the extreme variability of the cases within this category." 28 C.F.R. § 2.20 n. 1. If the Commission decides to exceed the lower limit of Category Eight parole eligibility by more than forty-eight months, it should "specify the pertinent case factors upon which it relied in reaching its decision." Id. Notably, Shakur did not contest the rating of the offense severity at Category Eight under the Commission's guidelines and thus, so long as the Commission specified its reasons, there was no upper limit to Shakur's parole period.

confinement, however, the service of an additional 15 years in no way seems excessive considering the gravity of the offense which involved four murders and serious injuries to others during multiple crimes of violence."

The Commission adopted the hearing examiner's decision. In determining whether to grant parole, the Commission must consider the circumstances and nature of the offense. See 18 U.S.C. § 4206; 28 C.F.R. § 2.18. As the Commission observed in its order:

> You were the organizer of a revolutionary movement that resorted to committing crimes of extreme violence between the years of 1976 and 1981 involving multiple robberies of armored vehicles and other financial institutions. During these assaultive events, four individuals were murdered and others were seriously injured. In addition, your group was involved in the kidnaping of two prison officials to effect the escape of one of your co-conspirators who was serving a life sentence for the murder of a state trooper.

Thus, the Commission concluded that the hearing examiner's determination as to Shakur's parole reconsideration hearing date was warranted based on the aggravating factors described above.

On appeal, the National Appeal Board ("NAB") affirmed the Commission's decision. In its decision, the NAB noted that the Commission mistakenly stated that Shakur had been in custody for 167 months, when in fact he had been in custody for 204 months, or 37 months more, as of February 11, 2003. However, the NAB rejected Shakur's request for a more lenient decision, finding that he had

6

shown no mitigating circumstances and the Commission sufficiently considered the mitigating and aggravating factors of his case.

Shakur then filed the present § 2241 petition. The magistrate judge issued a Report and Recommendation ("R&R") recommending denial of Shakur's petition. The magistrate judge stated that the district court's review of the Commission's decision was limited to whether the Commission acted arbitrarily or capriciously or abused its discretion, and the Commission's findings of fact received rational basis review. As for Shakur's argument that the Commission miscalculated his time in custody, the magistrate judge noted that the NAB found, despite the miscalculation, the reasons given by the Commission -- again, the enumerated reasons included the seriousness of the offenses of conviction which resulted in numerous deaths and the kidnaping of two law enforcement officials -- for the departure were appropriate. The magistrate judge further concluded that the decisions by the Commission and the NAB had a rational basis in the record, particularly since, under the Commission's own Rules and Procedures Manual, the 15-year reconsideration period is determined based on the date of the hearing rather than the time served by the prisoner at the time of the hearing.

The magistrate judge also was unpersuaded by Shakur's double-counting argument, particularly since Category Eight cases like Shakur's do not contain an

upper limit to the parole guideline range. Thus, the magistrate judge concluded, any decision, so long as it was supported by individualized findings, would be within the parole guidelines for a Category Eight case and not a departure. In essence, the magistrate judge concluded that there could not be double-counting for a Category Eight offense. Alternatively, the magistrate judge held that, even if Category Eight did have a maximum range, double-counting did not occur here because the nature and severity of the crimes were used as aggravating factors to depart from the guidelines after the Commission determined that the Category Eight guidelines did not adequately account for Shakur's risk to society and the severity of his actions.

Next, the magistrate judge rejected Shakur's argument that he was entitled to further disclosure from the Commission. Pre-hearing disclosure is exclusively governed by 28 C.F.R. § 2.55. See 28 C.F.R. § 2.56(g). Prior to a parole hearing, a prisoner may request disclosure of the "reports and other documents to be used by the Commission in making its determination." 28 C.F.R. § 2.55(a). "[D]isclosure of documents used by the Commission can normally be accomplished by disclosure of documents in a prisoner's institutional file." Id. The magistrate judge noted that Shakur had presented no evidence that the Commission relied on documents not previously disclosed to Shakur.

8

Finally, the magistrate judge found no error based on the NAB's refusal to grant Shakur a nunc pro tunc application of his parole proceedings to 1996. The magistrate judge first noted that it was Shakur's burden to apply for parole consideration and he had proffered no evidence showing that he did so prior to the May 2002 proceedings. Thus, the magistrate judge concluded, Shakur waived any parole consideration prior to May 2002. Moreover, even if he had applied for parole consideration in 1996, he did not receive a hearing until 2002, which was the date used for the reconsideration period.

Over Shakur's objections, the district court adopted the Report and Recommendation and denied Shakur's petition. This appeal followed.

Upon review of the record, we find no reversible error and affirm based on the magistrate judge's reasoning in the R&R, as adopted by the district court, as to Shakur's arguments concerning the Commission's calculation of his reconsideration date, the Commission's alleged double-counting, and the sufficiency of the Commissions' disclosure to Shakur prior to its parole decision. Simply put, we cannot say the decision of the Commission involved flagrant, unwarranted, or unauthorized action so as to constitute an abuse of the Commission's broad discretion in this area. Glumb, 891 F.2d at 873.

As for Shakur's argument concerning nunc pro tunc credit for his reconsideration hearing to 1996, when he alleges he initially was eligible for parole, we also find no error for the following reasons, which differ slightly from the R&R. A prisoner bears the burden of applying for parole when eligible. See 28 C.F.R. § 2.11. A prisoner must also serve a minimum term before becoming eligible for parole. See 28 C.F.R. § 2.12. A prisoner serving a term of imprisonment of over thirty years is eligible for release on parole after serving ten years. See 18 U.S.C. § 4205 (repealed by Pub. L. 98-473, 98 Stat. 2027 (1984)).

In rejecting Shakur's argument for a nunc pro tunc application of his parole proceedings to 1996, the district court stated that Shakur presented no evidence that he applied for parole any earlier than 2002. From our review, however, Shakur stated in his verified petition that he applied for parole consideration in February 1996. Cf. Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980) (when based on personal knowledge from a competent source, verified pleadings may be treated the same as affidavits for evidentiary purposes). Because Shakur stated in a verified petition that he applied for parole in 1996, the district court erred by finding there was no evidence showing that he applied for parole before May 2002.

However, we will not reverse on this basis due to the fact that we agree with

10

the district court's alternate holding, that <u>even if</u> Shakur <u>had applied</u> for parole in 196, he was not entitled to <u>nunc pro tunc</u> relief.  As the district court put it:

> Even if Petitioner had applied for an initial parole eligibility hearing in 1996, any claim that he did not receive such a hearing is moot, as he received a parole consideration hearing in 2002.  At that time, the Commission determined that, given the seriousness of Petitioner's offenses, a release date within the next fifteen years was not warranted.  As set forth [above], the fifteen-year reconsideration date is determined from the date of the hearing.  Thus, in Petitioner's case, the fifteen-year reconsideration date should have been, and was, set from the date of the hearing.  Neither the Commission nor the NAB abused its discretion by refusing to advance the reconsideration hearing date to 2011.

It was Shakur's burden to establish parole eligibility, both in the instant proceedings and in 1996, when he claims he first applied for a parole hearing.  The parole guidelines do not provide a customary maximum number of months to be served before a Category Eight offender may be paroled, but rather consider the expiration of the sentence to be the maximum limit. See 28 C.F.R. § 2.20 n. 1. On this record, Shakur has not shown an abuse of discretion in the Commission's findings as to the seriousness of the underlying offenses and, for a Category Eight offender, these individualized findings on aggravating factors support the parole reconsideration date calculated by the Commission.

Accordingly, we affirm the denial of § 2241 relief.

**AFFIRMED.**

11