**Mutulu SHAKUR, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 97 Civ. 2908(CSH).**

United States District Court, S.D. New York.

Signed Sept. 12, 2014.

Jonathan W. Lubell, Morrison Cohen Singer & Weinstein, New York, NY, for Petitioner.

### RULING ON MOTION TO CORRECT ILLEGAL SENTENCE

HAIGHT, Senior District Judge:

## I. INTRODUCTION

Petitioner Mutulu Shakur ("Petitioner"), a federal prisoner currently serving a sentence imposed by this Court, moves *pro se* under Federal Rule of Criminal Procedure 35(a) "to correct an illegal sentence." Motion, at 1.[1] Respondent United States ("the government") opposes the motion. On May 11, 1988, following a six-month jury trial before this Court, Petitioner was convicted of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), participation in a racketeering enterprise, bank robbery, armed bank robbery, and bank robbery murder, in violation of 18 U.S.C. §§ 1961, 1962(c), 1962(d), 2113(a), 2113(d), 2113(e), and 2. On August 2, 1988, the Court sentenced

Petitioner to sixty (60) years of imprisonment and "recommended that no parole consideration be given until the maximum period has been served." *United States v. Shakur,* 82 Crim. 312(CSH) (Aug. 2, 1988). On October 20, 1989, the Second Circuit affirmed the judgment of conviction in all respects. *United States v. Shakur,* 888 F.2d 234, 239 (2d Cir.1989) (*per curiam*). The United States Supreme Court denied *certiorari. Shakur v. United States,* 493 U.S. 1087, 110 S.Ct. 1152, 107 L.Ed.2d 1056 (1990).

In his present motion, Petitioner argues principally that his "otherwise legal sentence as pronounced by the court, became illegal" when the Court "recommended that no parole consideration be given until the maximum period has been served." Motion at 2 (internal quotation marks omitted). He asserts that the Court's recommendation has improperly "influenced the B.O.P. [Bureau of Prisons] and the Parole Commission" to "illegally carry-out that sentence." The government has filed a brief in support of its contention that Shakur's motion should be denied in its entirety. Petitioner has filed a reply brief.

Neither party asks for an evidentiary hearing. None is required because the validity of the motion turns entirely upon questions of law. This Ruling resolves the motion.

## II. BACKGROUND

### A. Facts and Procedural History

In 1976, Petitioner formed a militant political group known as the "Family,"

---

1. In light of his *pro se* status, the Court affords Petitioner "special solicitude," *Tracy v. Freshwater,* 623 F.3d 90, 101 (2d Cir.2010), and construes all of his pleadings liberally and broadly, "interpret[ing] them to raise the strongest arguments that they suggest," *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000). *See also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding allegations contained in *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers"); *Boykin v. KeyCorp,* 521 F.3d 202, 214 (2d Cir.2008) ("A document filed *pro se* is to be liberally construed ... [and] must be held to less stringent standards than formal pleadings drafted by lawyers") (internal quotations and citation omitted).

which was "organized in the mid–1970's to further its conception of the Black struggle in America." *Shakur*, 888 F.2d at 236. Although the group's goals were political, "their means of attaining those goals were violently criminal." *Id.* From December 1976 to October 1981, the Family engaged in a succession of robberies and attempted robberies of armored trucks in the northeastern states of the United States. Shakur was one of the leaders of a small inner circle in the Family who planned and executed the robberies. *Id.* The final and most notorious of these robberies occurred on October 20, 1981 and was known as the "Brinks robbery." That robbery resulted in the shooting deaths of three individuals, a Brinks security guard and two police officers in Nanuet and Nyack, New York.

After the Brinks robbery, Petitioner eluded the authorities for more than four years. The FBI placed him on their ten "Most Wanted" list and eventually found him living in Los Angeles under an assumed name. He was pursued, after being spotted walking down a street in East Los Angeles, and arrested on February 11, 1986.

Following protracted pre-trial proceedings, Shakur's trial commenced before this Court on November 9, 1987, On May 11, 1988, after six months of trial and seven days of jury deliberation, the jury returned a verdict of guilty on all counts, including the RICO, robbery and murder charges detailed *supra.* On August 2, 1988, this Court sentenced Shakur to sixty (60) years of imprisonment and recommended against parole.[2] As set forth above, the sentence was upheld upon appeal, 888 F.2d 234 (2d Cir.1989), *cert. denied,* 493 U.S. 1087, 110 S.Ct. 1152, 107 L.Ed.2d 1056 (1990).

On June 19, 1990, Petitioner moved this Court for a reduction of sentence pursuant to Rule 35(b), Fed.R.Crim.P. In that motion, Petitioner requested, *inter alia,* "that his sentence be reduced to time served or to concurrent rather than consecutive terms; that the sentence be changed from one imposed under 18 U.S.C. § 4205(a) to one imposed under 18 U.S.C. § 4205(b), thus accelerating his eligibility for parole; and to rescind the Court's recommendation against parole." *United States v. Shakur,* No. 82 Crim. 312(CSH), 1990 WL 200646, at *1 (S.D.N.Y. Dec. 4, 1990). The Court denied the motion in its entirety, setting forth its reasoning in its Ruling.[3] *Id.* In 1997, Petitioner filed a habeas corpus petition, seeking relief pursuant to 28 U.S.C. § 2255, alleging that the Government failed to disclose evidence favorable to Petitioner and presented perjured testimony. The Court denied that petition. *Shakur v. United States,* 32 F.Supp.2d 651 (S.D.N.Y. 1999).

## B. *Habeas Petitions in Other Districts and Parole Hearing*

In 1996, Petitioner filed a habeas corpus petition in the United States District Court for the District of Columbia against twenty-five employees of the federal Bureau of Prisons ("BOP") in their official capacity, alleging, *inter alia,* that these officials violated his Fifth Amendment right to due process. *Shakur v. Federal Bureau of Prisons,* No. Civ. A. 96–646, 1998 WL

---

**2.** The bank robbery murder convictions each carried a mandatory minimum term of ten (10) years of imprisonment, 18 U.S.C. § 2113(e).

**3.** With respect to its sentencing recommendation regarding parole, the Court found

Petitioner's arguments repetitive and unpersuasive, stating: "As to the remaining relief requested, for the most part the arguments made on Shakur's behalf were available and made for him at the time of sentencing." 1990 WL 200646, at *2.

51718 (D.D.C. Feb. 3, 1998). Specifically, Shakur alleged that "Defendants deprived him of his liberty interest to an early parole hearing in February 1996 by using information that 'they knew or had reason to know was false' to prevent the hearing from going forward." 1998 WL 51718, at *3 (quoting Complaint, at ¶ 50). The district court concluded that Shakur failed to "explain how, but for the allegation of his involvement in work strikes [at the prisons in which he was incarcerated], he would have been granted an early parole hearing less than a decade after he was sentenced to 60 years."[4] *Id.* In short, Shakur had "provided th[e] Court with no applicable law or regulation to suggest that he would have qualified for an early hearing in February 1996." *Id.* The district court granted summary judgment, dismissing the case with prejudice. *Id.* The Court of Appeals for the District of Columbia affirmed the district court's judgment in all respects. *Shakur v. Fed. Bureau of Prisons,* No. 98–5174, 1998 WL 796302, at *1 (D.C.Cir. Oct. 29, 1998) (*per curiam*).

On July 17, 2002, Shakur received a parole hearing. *See Shakur v. Wiley,* 156 Fed.Appx. 137, 139 (11th Cir.2005) (*per curiam*) (detailing facts of parole hearing). At that time, upon Shakur's request for disclosure of BOP and Commission files, the hearing examiner granted a continuance of the hearing. Shakur was able to "review the institutional file" and ultimately waived his right to review "the Commission's 'mini-file'" (*i.e.,* those documents contained in the Commission's file) in that the "mini-file did not contain any documents that had not been made available to him previously," with the exception of letters supporting his parole. *Id.* at 139 & n. 4. On September 24, 2002, upon Shakur's indication that he was ready to proceed, the hearing went forward.

The examiner ultimately denied parole, finding that "given Shakur's leadership role [in the Family], Shakur was accountable for his own actions as well as the actions of others in his enterprise."[5] *Id.*

4. In 1993, while incarcerated in the United States Penitentiary ("U.S.P.") at Lompoc, California, a medium security facility, "Plaintiff organized the Black Cultural Workshop ('BCW'), which represented the interests of African inmates." 1998 WL 51718, at *1. "With the approval and sanction of the prison administration, [Shakur] engaged in numerous political activities on behalf of the BCW." *Id.* Problems arose when the Lompoc facility suffered a work stoppage, which prison officials suspected was led by Shakur. *Id.* As a result, Shakur was transferred to U.S.P. Lewisburg, a high security facility in Pennsylvania, on July 26, 1993, where he joined the prison's chapter of the National Association for the Advancement of Colored People ("NAACP"). *Id.* In December 1993, inmates at U.S.P. Lewisburg engaged in rioting and work stoppages, protesting the new sentencing guidelines. *Id.,* at *2. From January to February 1994, various Lewisburg officials confronted Petitioner with his alleged involvement in the riots. *Id.* He was thereafter transferred to the federal penitentiary in Marion, Illinois, due to its additional security,

then to U.S.P. Florence, Colorado, for it maximum security, and finally to U.S.P. Atlanta in September 1996, upon his successful compliance with programs and procedures to earn a right to a lesser standard of security. *See also* Reply Brief, at 12–13 (Petitioner "has a record of being transferred from facility to facility as a problem inmate"). As of the filing. date of the present Petition, Shakur was incarcerated at U.S.P. Victorville, a high security facility in California.

5. At the parole hearing, the hearing examiner summarized Shakur's involvement in the Family "between December 1976 and November 1981," including "a RICO conspiracy and the attempt to commit seven armed robberies, four armed robberies of armored trucks, kidnapping [sic] of a prison guard and matron and freeing a fellow member, the murder of two Brinks guards and two police officers, removal and concealment of evidence, and the threatening of other individuals, as well as serious injury of others during the robbery of an armored car." Doc. 9, Ex. B ("Initial Hearing Summary"), at 5.

at 139. Therefore, "anything less than a 15–year reconsideration hearing date would depreciate the seriousness of the offense." *Id.* at 139–40. The examiner further commented that Shakur "has currently served about 14 years in confinement, however, the service of an additional 15 years in no way seems excessive considering the gravity of the offense which involved four murders and serious injuries to others during multiple crimes of violence." *Id.* at 140. Therefore, Shakur would not be entitled to parole reconsideration until 2017.

The Parole Commission (herein also "Commission") adopted the hearing examiner's decision, concluding that "the hearing examiner's determination as to Shakur's parole reconsideration hearing date was warranted based on the aggravating factors described." *Id.* In its order, the Commission emphatically reminded Shakur:

> You were the organizer of a revolutionary movement that resorted to committing crimes of extreme violence between the years of 1976 and 1981 involving multiple robberies of armored vehicles and other financial institutions. During these assaultive events, four individuals were murdered and others were seriously injured. In addition, your group was involved in the kidnaping of two prison officials to effect the escape of one of your co-conspirators who was serving a life sentence for the murder of a state trooper.
>
> Not only did you orchestrate the criminal acts carried out by you and others, you also demonstrated a willingness to be an active participant in these crimes

of violence by assuming a "front-line" level of involvement in the robberies and criminal assaults.

*Id.*

On appeal, the National Appeal Board ("NAB") affirmed the Commission's decision. *Id.* In particular, the NAB "rejected Shakur's request for a more lenient decision, finding that he had shown no mitigating circumstances and the Commission sufficiently considered the mitigating and aggravating factors of his case." *Id.*

Thereafter, in 2004, Shakur filed a *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of Georgia. *Shakur v. Wiley*, No. 1:04–cv–445 (RWS) (N.D.Ga.2004), In that petition, Shakur challenged the Commission's denial of parole and decision to set a 15–year reconsideration date. *See Wiley*, No. 1:04–cv–445, at Doc. 1 (filed 2/17/2004), After conducting a *de novo* review of Petitioner's claims and the recommended ruling of Magistrate Judge Walter E, Johnson, District Judge Richard Story denied the petition, approving and adopting the recommended ruling. *Wiley*, No. 1:04–cv–445, at Doc. 15 (adopting Doc. 11 ("Magistrate Judge's Final Order and Report and Recommendation," dated 8/12/2004)).

The Court of Appeals for the Eleventh Circuit affirmed, as follows:

> It was Shakur's burden to establish parole eligibility, both in the instant proceedings and in 1996, when he claims he first applied for a parole hearing. The parole guidelines do not provide a customary maximum number of months to

---

Shakur did not contest the hearing examiner's rating of his offense severity (category 8) under the Commission's guidelines, 28 C.F.R. § 2.20, but did assert that "he was not responsible for the deaths associated with his offense, that he did not kill anyone, and that if

he was guilty of anything it was trying to protect the rights of others." *Id.*, at 1. Shakur admitted, however, that "he was part of a security struggle and that he used weapons and wore vests." *Id.*

be served before a Category Eight offender may be paroled, but rather consider the expiration of the sentence to be the maximum limit.[6] *See* 28 C.F.R. § 2.20 n. 1. On this record, Shakur has not shown an abuse of discretion in the Commission's findings as to the seriousness of the underlying offenses and, for a Category Eight offender, these individualized findings on aggravating factors support the parole reconsideration date calculated by the Commission.

*Shakur v. Wiley,* 156 Fed.Appx. 137, 142 (11th Cir.2005). On May 30, 2006, the United States Supreme Court denied *certiorari. Shakur v. Wiley,* 547 U.S. 1170, 126 S.Ct. 2337, 164 L.Ed.2d 852 (2006).

### III. PENDING MOTION

On March 1, 2012, more than two decades after he was denied parole, Shakur filed the present motion, seeking to correct an allegedly "illegal" sentence pursuant to Federal Criminal Rule 35(a).[7] In that motion, Shakur asserts that his "otherwise legal sentence as pronounced by the court, became illegal, when the court 'recommended' that 'no parole consideration be given' until the end of the maximum period had been served." Motion, at 2. Given the dates of Shakur's offenses, the applicable federal statute regarding the "[t]ime of eligibility for release on parole" provided that "a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving *ten years* of a life sentence or *of a sentence of over thirty years*, except to the extent otherwise provided by law." 18 U.S.C. § 4205(a) (repealed by Pub.L. 98–473, 98 Stat 2027 (1984)) (emphasis added).[8]

Relying on § 4205(a), Petitioner asserts that the Court lacked authority to recom-

---

**6.** As the Eleventh Circuit explained:

There are eight offense categories, and the parole guidelines provide upper and lower confinement limits for categories one through seven, from which the Commission may depart for good cause. *See* 18 U.S.C. § 4206(c). Offense Category Eight is reserved for only the most serious crimes, and therefore 'no upper limits are specified due to the extreme variability of the cases within this category.' 28 C.F.R. § 2.20 n. 1. 156 Fed.Appx. at 140 n. 5.

**7.** Because Shakur committed his offenses prior to November 1, 1987, the former version of Federal Rule of Criminal Procedure 35(a), as adopted in 1985, applies to his case. That rule, which allowed the court to "correct an illegal sentence at any time," was amended after the Sentencing Reform Act, 98 Stat. 1987, abolished federal parole. *United States v. Lussier,* 104 F.3d 32, 37 (2d Cir.1997). Through that amendment, "Congress ... explicitly foreclosed [the Rule 35(a)] route for obtaining judicial review of an allegedly illegal sentence *at any time." Lussier,* 104 F.3d at 37 (internal quotation marks omitted) (emphasis added). The current version of Rule 35(a) provides that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." The government concedes that the former version of Rule 35(a) governs the case at bar. *See* Brief, at 5.

**8.** Before November 1, 1987, the Parole Commission and Reorganization Act of 1976 ("PCRA") governed the terms of federal sentences. 18 U.S.C. §§ 4201–4218 (repealed 1984, effective 1987). Under 18 U.S.C. § 4206, the Parole Commission was authorized to award federal prisoners parole under specified circumstances.

Dissatisfied with the parole system, Congress passed the Sentencing Reform Act of 1984 ("SRA"), which repealed and replaced the PCRA and became effective on November 1, 1987. Pub, L. No. 98–473, §§ 212, 218; 98 Stat.1987, 2027 (codified as amended at 18 U.S.C. §§ 3551–59, 3561–66, 3571–74, 3581–86; 28 U.S.C. §§ 991–98 (1988)). Under the SRA, parole was abolished for offenses committed after November 1, 1987. *See United States v. Story,* 891 F.2d 988, 990 (2d Cir. 1989) ("In 1987 Congress ... amended the effective date provision of the 1984 Act [SRA] by adding language to specify that the Act 'shall apply only to offenses committed after' the November 1, 1987, effective date.").

mend against parole and "this abuse of discretion by the sentencing court" unlawfully influenced the Commission to "manipulate the amount of time the petitioner was legally required to serve" before receiving parole consideration. Motion, at 3, 12. Petitioner thus concludes that although he received a parole hearing in 2002, his "initial parole hearing should have been held in 1996," after he had served 10 years of his sentence.[9] *Id.* at 5.

## IV. DISCUSSION

### A. Former Fed.R.Crim.P. 35

Petitioner moves this Court to correct his sentence pursuant to Federal Rule of Criminal Procedure 35(a). Because his offenses were committed prior to November 1, 1987, the version of Rule 35 adopted in 1985 applies to Shakur's case (herein "former Rule 35"). *United States v. Blackmer*, 909 F.2d 66, 67 (2d Cir., 1990) ("former Rule 35(a) remains applicable to offenses-such as the one at issue here-committed prior to November 1, 1987"), *vacated and remanded on other grounds*, 499 U.S. 944, 111 S.Ct. 1409, 113 L.Ed.2d 462 (1991).

Former Rule 35 provided, in pertinent part:

(a) Correction of Sentence. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) Reduction of Sentence, A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Fed.R.Crim.P. 35(a)-(b) (1985).

### B. Discretion of the Court to Deny Motion where Shakur Previously Raised Same Issue before Court

In 1990, Shakur previously litigated the issue of whether this Court should rescind its recommendation against parole. At that time, Shakur moved the Court for a reduction of his sentence under former Rule 35(b), Fed.R.Crim.P., including a request for the Court "to rescind the prior recommendation against parole." *United States v. Shakur*, No. 82 Cr. 312(CSH), 1990 WL 200646, at *1 (S.D.N.Y. Dec. 4, 1990). Specifically, Petitioner moved the Court under former Rule 35(b) to, *inter alia*, change his sentence "from one imposed under 18 U.S.C. § 4205(a) to one imposed under 18 U.S.C. § 4205(b), thus accelerating his eligibility for parole; and *to rescind the prior recommendation against parole*." *Shakur*, 1990 WL 200646, at *1 (emphasis added). That motion was denied.

Twenty-four years later, Shakur seeks once again to challenge the validity of the Court's recommendation regarding parole.

---

**9.** Because Petitioner entered federal custody in 1986, according to his computation under former § 4205(a), he became eligible for parole consideration in 1996—*i.e.*, after serving 10 years in prison. *See* Motion, at 4 ("In 1996, after serving 10 years, [Shakur] qualified for the purposes of the 1/3 mandate of § 4205(a) [for a] parole eligibility hearing") (capitalization and parentheses omitted).

He purports to avoid the 120–day time limitation of former Rule 35(b) by alleging that his sentence was illegal under former Rule 35(a).[10] Despite Petitioner's efforts to re-frame the issue, the Court may, in its discretion, decline to consider the merits of the present motion where the Court previously addressed and rejected Petitioner's request to rescind its recommendation against parole.[11] *See, e.g., United States v. Joseph,* 205 Fed.Appx. 765, 768 (11th Cir. 2006) (petitioner could not properly "argue again—after raising the claim in his direct appeal, section 2255 motion, and his first Rule 35(a) motion—that his 40–year minimum sentence before becoming eligible for parole violate[d] 18 U.S.C. § 4205" because "[t]he law of the case doctrine bar[red] relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case") (quoting *United States v. Jordan,* 429 F.3d 1032, 1035 (11th Cir.2005)).

■ In 1990, Shakur sought leniency in sentencing pursuant to Rule 35(b). As this Court noted, "[a] motion under … Rule [35(b) ] is 'essentially a plea for leniency'" and its function is to "afford the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented to him in the interim [between sentencing and motion]." 1990 WL 200646, at *1 (quoting *United States v. Ellenbogen,* 390 F.2d 537, 543 (2d Cir.1968), *cert. denied,* 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968) and citing *United States v. Mescaine–Perez,* 849 F.2d 53, 58 (2d Cir.1988)). Rather than seeking leniency, Shakur now asserts that his sentence was "illegal" under Rule 35(a) in that the sentence contravened the provisions of § 4205(a). He thus calls upon the Court to exercise its discretion to alter his sentence.

Pursuant to former Rule 35(a), "[t]he court *may* correct an illegal sentence at any time," Fed.R.Crim.P. 35(a) (1987) (emphasis added). The Second Circuit has noted that "[e]ven where the sentence was illegal, former Rule 35 only gave the court *discretion* to modify the sentence; it did not require that the court do so." *See United States v. Finkielstain,* 293 Fed. Appx. 62, 63 (2d Cir.2008) (citing and quoting Fed.R.Crim.P. 35(a) (1987) (emphasis added)). *See also United States v. Rivera,* 376 F.3d 86, 91–92 (2d Cir.2004) (holding

---

10. Although the Court recognizes that former Rule 35(a) authorized the court to "correct an illegal sentence at any time," the Second Circuit has clarified that under Rule 35(a), the "wide latitude" afforded to the court by former Rule 35(a) does not mean that a defendant has a "due process right to continue to challenge his conviction in perpetuity." *United States v. Rivera,* 376 F.3d 86, 91–92 (2d Cir.2004). Moreover, "[p]rudential considerations" may support a district court's exercise of discretion "not to review the sentence in light of the passage of time." *United States v. Finkielstain,* 293 Fed.Appx. 62, 63 (2d Cir. 2008). *See also Herrera v. Collins,* 506 U.S. 390, 426, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (O'Connor, *J.,* concurring) ("At some point in time, the state's interest in finality must outweigh the prisoner's interest in yet another round of litigation. In this case, that point was well short of eight years."); *Abdul-*

lah v. Hedrick, 392 F.3d 957, 963 (8th Cir. 2004) (due process clause "does not require that a petitioner have more than one unobstructed procedural opportunity to challenge his conviction."), *cert. denied,* 545 U.S. 1147, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005).

11. Petitioner argues in his Reply Brief, at 6, that "this is the first time the issue is raised" because in his original challenge to the Court's parole recommendation, he asked the Court to rescind its recommendation against parole under Rule 35(b); and this time he asserts that the recommendation was "an illegal sentence" under § 4205(a). Whether framed as a motion to reduce or to correct his sentence with reference to parole, the Court was asked both then and now to consider the validity of its recommendation.

that the "wide latitude" offered by former Rule 35(a) was "not required by the Due Process Clause" so that "a defendant has no due process right to continue to challenge his conviction in perpetuity"). Accordingly, under former Rule 35(a), even if a sentence may be arguably "illegal," modification by the court is permissible (*i.e.*, within the court's discretion), as opposed to mandatory.

■ In the case at bar, where (1) the Petitioner has previously raised the issue of the Court's recommendation against parole in 1990; (2) the Court made clear that it rejected the claim at that time; and (3) 24 years have elapsed since the Court's ruling on that prior motion, there are strong grounds for the Court to exercise its discretion and deny Shakur's motion. As the Second Circuit stated in *Finkielstain*, affirming the district court's denial of a motion to correct sentence, "[d]uring the years between the sentence and the motion to correct the sentence, [the petitioner] had ample opportunity to challenge the legality of his sentence," 293 Fed.Appx. at 63. Therefore, where 18 years elapsed between Finkielstain's sentencing and his motion to correct sentence, "[p]rudential considerations fully supported the district court's exercise of its discretion not to review the sentence in light of the passage of time." *Id.*

In sum, as the Government asserts in its Brief [Doc. 8], at 7, "[t]o permit Petitioner now to present the same arguments again in a second [f]ormer Rule 35 motion, after these [same] arguments were rejected by this Court, would undermine the '[p]rudential considerations' recognized by the Second Circuit in *Finkielstain*." Brief, at 9. Because the Court has effectively ruled on the issue of its parole recommendation, its "decision should generally be adhered to by [this] court . . . unless cogent or compelling reasons militate otherwise." *Unit-*

*ed States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.2002) (internal quotation marks omitted). *See also Joseph*, 205 Fed.Appx. at 768 (petitioner could not properly reargue "that his 40–year minimum sentence before becoming eligible for parole violate[d] 18 U.S.C. § 4205" because "[t]he law of the case doctrine bar[red] relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case") (citation and internal quotation marks omitted). Moreover, after the passage of 24 years, it may well be said that "the State's interest in finality" likely "outweigh[s] the prisoner's interest in yet another round of litigation." *Herrera v. Collins*, 506 U.S. 390, 426, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (finding state's interest in finality solidified at a "point . . . well short of eight years").

In the case in suit, not only did Petitioner have ample time to make a motion addressing his sentence during his twenty-four years of incarceration, he actually made a similarly-oriented motion in 1990 and failed to succeed. In light of the passage of time since Petitioner's sentencing and his prior failed attempts to litigate the same issue, the Court, in its discretion, need not reach the merits of Shakur's motion.

However, because a court's discretion, albeit broad, is by its very nature subjective, the Court will address the merits of Shakur's motion, which provides an alternative, and equally strong, basis for the Court's denial of his motion.

### C. *Merits of Shakur's Petition*

■ As an alternative basis for its holding, the Court concludes that, in any event, there are no valid grounds upon which to find the sentence imposed against Shakur "illegal." Specifically, the Court did nothing improper when it made its recommendation against parole, but rather acted

within the bounds of applicable sentencing law.

On August 2, 1988, this Count sentenced Shakur as follows:

> The defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of twenty (20) years on Count 1; on Count 2: twenty (20) years to run concurrently with Count 1; Count 3: merged with Count 5; Count 4: merged with Count 5; Count 5: thirty (30) years, to **run** concurrently with Counts 1 and 2; Count 6: merged with Count 8; Count 7: merged with Count 8; on Count 8: thirty (30) years to run consecutively with Counts 1, 2 and 5. *The Court recommends that no parole consideration be given until the maximum period has been served.* The defendant is advised of his right to appeal. The defendant is remanded.

Doc. 9, Ex, A ("Judgment and Probation/Commitment Order") (emphasis added).

■ Prior to its repeal in 1984, 18 U.S.C. § 4205(a) provided that "[w]henever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law." 18 U.S.C. § 4205(a) (repealed by Pub.L. 987–473, 98 Stat.2027 (1984), but continued in effect, *see* n. 14, *infra*). Based on that statute, Shakur argues that this Court "did not have the authority" to recommend against parole in view of § 4205(a). Mo-

tion, at 3. He is, however, incorrect. A district court "manifestly has the authority to recommend against a defendant's parole." *United States v. Bartholomew,* 68 F.3d 471, 1995 WL 581876, at *1 (5th Cir.1995) (*per curiam*)[12] (denying appeal of judgment where Petitioner "argu[ed] first, that the district court's 'Commitment Recommendation' was an *ultra vires,* illegal order, and, second, that a district court in general lacks authority to recommend against parole"), *denying reh'g and suggestion for reh'g en banc,* 71 F.3d 880 (5th Cir.1995). Moreover, a "district court's recommendation [is] in fact only a recommendation," *Bartholomew,* 68 F.3d at 471, having no binding effect upon the Commission.

Former § 4205(a) prescribed the time frame in which a prisoner would become "eligible" for consideration regarding release on parole. It in no way entitled a prisoner to be released on parole after a particular number of years; nor did it prohibit the sentencing court from making recommendations against parole. Moreover, as previously noted by the Eleventh Circuit, due to the severity of his crimes, Shakur is a category 8 offender under the parole guidelines; and "[t]he parole guidelines do not provide a customary maximum number of months to be served before a Category Eight offender may be paroled." *Shakur v. Wiley,* 156 Fed.Appx. 137, 142 (11th Cir.2005). Rather, those guidelines "consider the expiration of the sentence to be the maximum limit" for such offenders. *Id.* (citing 28 C.F.R. § 2.20 n. 1).[13]

Furthermore, § 4205(a) included no language suggesting that a court's sentencing

---

**12.** The Fifth Circuit's opinion in *Bartholomew,* 68 F.3d 471, was not published in West's Federal Reporter so the Court has included its parallel citation of 1995 WL 581876.

**13.** Note 1 to § 2.20 explains that "[r]egarding 'customary total time to be served before release,' the guidelines clarify that "[f]or Category Eight, no upper limits are specified due to the extreme variability of the cases within this category." 28 C.F.R. § 2.20 n. 1.

recommendation must be followed by the Commission in making its parole determinations. Instead, pursuant to 18 U.S.C, § 4203(b)(1), the Commission solely "shall have the power to—(1) grant or deny any application or recommendation to parole any eligible prisoner." In making parole determinations, the Commission "shall *consider* [*i.e.,* but *not be bound to follow*] . . . recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge." 18 U.S.C. § 4207(4) (emphasis added); 28 C.F.R. § 2.19(a)(4) & (d).[14]

Read together §§ 4203(b), 4205(a), and 4207(4) contemplated that sentencing judges would on occasion make parole recommendations to the Commission; and although the Commission was instructed to consider these recommendations, it was in no way obligated to follow them in making parole decisions. *See, e.g., Heath v. U.S. Parole Comm'n,* 788 F.2d 85, 92 (2d Cir. 1986) ("The Commission is not obligated to follow the recommendations of the sentencing court."), *cert. denied,* 479 U.S. 953, 107 S.Ct. 443, 93 L.Ed.2d 391 (1986); *Dioguardi v. United States,* 587 F.2d 572, 574–75 (2d Cir.1978) (the Commission's decision to grant or deny parole is not part of the sentencing process). *See also United States v. Dean,* 752 F.2d 535, 544 (11th Cir.1985) ("The authority to determine whether a defendant will be released on parole is vested in the Parole Commission, not the sentencing judge" so that "[t]he

sentencing judge may not use Rule 35(a) as a means to usurp the authority of the Parole Commission."), *cert. denied,* 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986); [15] *Ganz v. Bensinger,* 480 F.2d 88, 89 (7th Cir.1973) (proceedings before a parole board are not part of the sentencing process or a criminal prosecution).

I have had occasion in an earlier case to note that "it is the Commission which is charged with properly valuing recommendations and information presented to it." *United States v. Rosenberg,* 108 F.Supp.2d 191, 223 (S.D.N.Y.2000). *Accord United States v. Schifano,* 748 F.Supp. 172, 174 (S.D.N.Y.1990) ("the Parole Commission, not the Court, [is vested with] the responsibility for determining when a defendant will be released on parole, and therefore 'the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term.' ") (quoting *United States v. Addonizio,* 442 U.S. 178, 190, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979)).

 Thus, it is well-established that this Court was permitted, perhaps even expected, to use its discretion to make a recommendation regarding parole at the time of sentencing. Such a recommendation, if made, was entitled to consideration, but in no way dictated either the timing or outcome of any parole hearing. "Congress has vested the sole power to grant or deny parole in the sound discretion of the Com-

---

**14.** Although 18 U.S.C. §§ 4205 & 4207 were repealed, Pub.L. 98–473, Title II, § 218(a)(5), 98 Stat. 20127 (1984), Congress directed that the entire statutory Chapter "remain in effect for thirty-one years after Nov. 1, 1987." That period expires in 2018.

**15.** As the Court of Appeals for the Eleventh Circuit explained in *Dean:*

[T]he judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory

term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. . . . [W]e hold that *subsequent actions taken by the Parole Commission*—whether or not such actions accord with a trial judge's expectations at the time of sentencing—*do not retroactively affect the validity of the final judgment itself*

752 F.2d at 544 (emphasis added).

mission." *Iuteri v. Nardoza,* 732 F.2d 32, 36 (2d Cir.1984) (citing *Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976)). After all, "parole is a function of the Parole Commission, which is separate and distinct from the sentencing duties of the district court." *United States v. Clark,* 781 F.2d 730, 732 (9th Cir.1986).

In the case at bar, Shakur's present motion contends that this Court must "remove its 'no parole' recommendation" because the recommendation was "illegal." Reply Brief, at 17. However, the requested remedy falls outside the meaning of an "illegal sentence," as that phrase is used in former Rule 35(a). In *United States v. Lika,* 344 F.3d 150, 153 n. 3 (2d Cir.2003), the Second Circuit parsed Rule 35 and drew a distinction between a sentence that is "illegal on its face" and "illegally imposed." To succeed on this motion Shakur must demonstrate the facial illegality of his sentence, since under Rule 35(b) "Motions to correct an illegally imposed sentence must be brought within 120 days of the triggering events." *Lika,* 344 F.3d at 153 n. 3. Shakur cannot make that showing.

Shakur's theory of sentence illegality is that the Court's recommendation, "that no parole consideration be given until the maximum period has been served," violated 18 U.S.C. § 4205(a), which in Shakur's view mandated a "one-third parole consideration hearing on any term of years, and 10 years eligibility on life sentences with a 30 year maximum that could be served." Motion, at 3. From that premise, Shakur argues:

> When the court pronounced the "recommendation," that no parole consideration be given until the maximum period has been served, it in effect recommended that the Bureau of Prisons and the Parole commission violate

the law and congressional intent that WAS provided in the sentencing under § 4205(a). The court DID NOT have the authority to recommend that "No parole consideration be given." This abuse of discretion by the sentencing court consequently has influenced an ILLEGAL carrying-out of that sentence by the B.O.P.!

Motion, at 3, This concept of sentence illegality has some surface appeal. Dr. Shakur expounds upon the theory forcefully and with skill in his briefs. However, it does not withstand analysis. I conclude that the circumstances of this case do not and cannot, as a matter of law, give rise to an "illegal" sentence within the meaning and effect of former Rule 35.

In *United States v. Lika,* the Second Circuit undertook to define an "illegal" sentence under former Rule 35. The *per curiam* opinion states:

> Sentences subject to correction as "illegal" under former Rule 35 are those that the judgment of conviction did not authorize. By that measure, Lika's sentence is not illegal. It is not in excess of a statutory provision or otherwise contrary to the applicable statute, and its terms are not legally or constitutionally invalid in any other respect.

344 F.3d at 153 (citations and internal quotation marks omitted). Sentences were subject to correction under Rule 35 if they were "in excess of the statutory maximum or otherwise unauthorized by statute, ... did not conform to the oral pronouncement of sentence, or ... were ambiguous with respect to the time and manner of service." 3 Fed. Prac. & Proc. Crim. § 617 (4th Westlaw update April 2014) (internal quotation marks omitted). Measured by these standards, the Court's recommendation against parole is not "illegal" for purposes of former Rule 35(a). That recommendation did not lengthen

Shakur's sentence beyond the statutory maximum for the offenses committed nor did it contravene any oral pronouncement of sentence.[16] Moreover, given the plain language of the sentence, including the recommendation, there was no ambiguity in any respect.

What happened in this case is that at the time of sentencing, the Court recommended that "no parole consideration be given until the maximum period has been served." That is the extent of the matter. The Court's recommendation did no violence to § 4205(a) or any other statute. The maximum period an inmate must serve prior to parole consideration under § 4205(a) was one-third of the total sentence or 10 years if the sentenced exceeded 30 years. Further, § 4205(a) must be read in conjunction with 4205(b)m which provided that "[u]pon entering a judgment of conviction, the court having jurisdiction to impose sentence, . . . may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court, or (2) *may fix the maximum sentence of imprisonment to be served* in which event the court may specify that the prisoner may be released on parole at such time as the

Commission may determine." 18 U.S.C. § 4205(b) (emphasis added). Here, the Court recommended the latter—the maximum sentence to be served; and it was up to the Commission to set dates for parole consideration and make its own determination. *See, e.g., Iuteri v. Nardoza*, 732 F.2d 32, 34 (2d Cir.1984).[17]

Under the statutory scheme, it is clear that in recommending in its sentence on August 2, 1988 that "no parole consideration be given [to Shakur] until the maximum period has been served," this Court acted within its discretion, as contemplated and allowed by §§ 4205 and 4207(4). That recommendation neither affected nor impaired Petitioner's eligibility for parole; nor was it binding on the Commission as to any parole determination. That is to say: the Court's recommendation imposed no adverse effect upon Shakur of which he is entitled in law to complain. When examined on the merits, the motion must fail.

### D. *Motion is Moot in Light of Prior Parole Hearing and Commission's Broad Discretion to Make Parole Determination*

■ Lastly, even assuming *arguendo* that the Petitioner is correct—that this Court erred in making its sentencing recommendation that "no parole consideration be given until the maximum period has been served"—Shakur's present motion is

---

16. The United States Supreme Court "made it quite clear that it does not consider the Commission's decision to grant or deny parole to be part of the sentencing process," *Dioguardi v. United States*, 587 F.2d 572, 574 (2d Cir. 1978) (citing *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Specifically, the Supreme Court stated in *Morrissey* that "[p]arole arises after the end of the criminal prosecution, including imposition of sentence." 408 U.S. at 480, 92 S.Ct. 2593. In *Bradley v. United States*, 410 U.S. 605, 611 n. 6, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973), the Court added that "[t]he decision to grant parole . . . lies with the Board of Parole, not with the District Judge, and must

be made long after sentence has been entered and the prosecution terminated."

17. In *Iuteri v. Nardoza*, 732 F.2d 32, 34 (2d Cir.1984), the district judge sentenced Iuteri pursuant to 18 U.S.C. § 4205(b)(2) to consecutive terms of imprisonment totaling fifteen years, stating that with respect to parole, "if there was ever a case for using the maximum, this is the case for the particular charges . . . here;" and the Second Circuit noted that "Section 4205(b)(2) leaves the question of parole entirely at the discretion of the Commission." 732 F.2d at 34 n. 1.

effectively moot.[18] Despite the Court's recommendation, Shakur did in fact receive parole consideration in 2002; and on the face of the hearing summary and notice of action, the Commission made no reference to, much less attempted to conform with, this Court's recommendation.

■ Furthermore, as to the Commission's determination that Shakur was not entitled to release on parole, that decision lies within the Commission's broad discretion.[19] *Bialkin v. Baer*, 719 F.2d 590, 593 (2d Cir.1983) ("Federal court review of parole commission decisions is extremely limited, because the commission has been granted broad discretion to determine parole eligibility.") (citing, *inter alia*, 18 U.S.C. § 4218(d)).[20] In addition, with respect to Shakur's allegation that the Commission improperly calculated his time served for purposes of determining the date when he was first eligible for parole, Motion, at 5–6, that calculation rests within the duties of the Commission. 28 C.F.R. § 2.12.

Petitioner claims that the Court's sentence (*i.e.*, recommendation regarding parole) was "illegal" because it improperly influenced the Commission to refuse to grant him a parole hearing in 1996, when he first became eligible for parole under 18 U.S.C. § 4205(a).[21] However, there is no evidence that the Parole Commission failed to schedule a parole hearing for Shakur in 1996 due to the Court's recommendation against parole. There is thus no evidentiary support for Petitioner's assertion that "[o]ne of the reasons" Petitioner did not receive a parole hearing in 1996 was "that his sentence is illegal, and ... must be modified to delete the recommendation against parole." Reply Brief, at 8. Furthermore, the record does not reflect any efforts by Shakur to apply for parole earlier than 2002; and it was his burden as a prisoner to make an application for parole

18. In recommending against parole, the Court did not, and could not, prevent the Parole Commission from conducting a hearing regarding parole of Shakur under § 4205(a) or (b). Rather, the Court recommended against parole prior to the expiration of Shakur's maximum sentence in light of the scope and gravity of his offenses.

19. *See, e.g., Dioguardi v. United States*, 587 F.2d 572, 575 (2d Cir.1978) ("Congress has given the Parole Commission the sole power to grant or deny parole in the exercise of its discretion."); *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 944 (2d Cir.1976) ("it is not the function of the courts to review the discretion of the Board in the denial of applications for parole").

20. As the Second Circuit articulated in *Bialkin;*

> Deference to the commission's interpretation of its own regulations is required unless that interpretation is shown to be unreasonable.
> The appropriate standard for review of the commission's decisions is whether there has been an abuse of discretion. This

means that a court may not substitute its own judgment for that of the commission, but may consider only whether there is a rational basis for the commission's decision.
719 F.2d at 593 (internal citations omitted).

21. Contrary to Petitioner's assertions, there is no evidence that the District Court had "the discretion or ability to prevent [his] parole consideration after ten years," Reply Brief, at 10. The Parole Commission exercised the sole authority to set the date for the parole hearing and determine its outcome.

Moreover, Petitioner himself indicated that any parole hearing he was due in 1996 may have been delayed due to his involvement in litigation at that time. *See* Reply Brief, at 13–14 ("While at U.S.P., Atlanta, [Petitioner] sued the FBOP and claimed that his transfers were in retaliation for exercise of his First Amendment Rights;" and "when he filed the lawsuit against the FBOP [in 1996], he was told that he would not receive a parole hearing while the litigation was pending."). *See also Shakur v. Fed. Bureau of Prisons*, No. CIV. A. 96–646, 1998 WL 51718, at *3 (D.D.C. Feb. 3, 1998).

when he became eligible. *See* 28 C.F.R. § 2.11 ("A federal prisoner ... desiring to apply for parole shall execute an application form as prescribed by the Commission.").[22]

In any event, whether or not Shakur made an application for a parole hearing in 1996, his claim regarding denial of parole consideration became moot when he was granted a parole hearing on July 17, 2002. In other words, his request for a parole hearing was granted, regardless of this Court's recommendation against parole; and thus his claim is moot. *See Shakur,* 156 Fed.Appx. at 142 (affirming denial of Petitioner's § 2241 petition challenging the Commission's denial of parole because "[e]ven if Petitioner had applied for an initial parole eligibility hearing in 1996, any claim that he did not receive such a hearing is moot, as he received a parole consideration hearing in 2002").

Furthermore, contrary to Petitioner's allegation that "no real parole consideration was ever given," the hearing examiner performed a careful and meaningful review of the evidence presented. In deciding that Shakur should not be eligible for further parole consideration until 2017, the examiner set forth its reasons in full detail, stating:

> You were the organizer of a revolutionary movement that resorted to committing crimes of extreme violence between the years of 1976 and 1981 involving multiple robberies of armored vehicles and other financial institutions. During these assaultive events four individuals were murdered and others were seriously injured. In addition, your group was involved in the kidnapping [sic] of two prison officials to effect the escape of one of your co-conspirators who was serving a life sentence for the murder of a state trooper.

Doc. 9, Ex. B ("Initial Hearing Summary," dated Sept. 29, 2002), at 6. In addition, nowhere did the examiner refer to, much less, as Shakur alleges [Motion, at 9], "attempt to ... conform" its findings to this Court's "no parole" recommendation.

Shortly thereafter, the Commission, when adopting the hearing examiner's determination, likewise failed to mention the Court's recommendation. Doc. 9, Ex. C ("Commission Notice of Action," dated Oct. 2, 2002). Rather, the Commission gave its own detailed conclusions, focusing, as did the hearing examiner, on the gravity of Shakur's crimes, including armed robberies, four murders, and the kidnaping of two prison officials to effect a co-conspirator's escape. *Id.* at 1. In sum, there is no evidence that Petitioner has been prejudiced by the allegedly "illegal" sentence of this Court.

## V. CONCLUSION

For the foregoing reasons, Petitioner's motion to correct the sentence previously imposed by this Court, which Petitioner asserts is "illegal" pursuant to former Rule 35(a), Fed.R.Crim.P., is DENIED. The Petition is DISMISSED with prejudice. The Clerk is instructed to close the file.

It is SO ORDERED.

---

**22.** As Magistrate Judge Johnson of the Northern District of Georgia stated:

> [Petitioner Shakur] has provided no evidence that he applied for parole consideration in 1996. In fact, the only evidence in the record provides that he did not apply for parole consideration until May of 2002, notwithstanding his earlier eligibility. Thus, according to 28 C.F.R. § 2.11, Petitioner waived any parole consideration prior to May, 2002.

*Shakur v. Wiley,* No. 1:04–cv–445 (RWS) (N.D.Ga.2004), Doc. 11, at 17–78 (citation and footnote omitted).