******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* BRYANT BROWNE
## (AC 47770)

Seeley, Wilson and Harper, Js.

*Syllabus*

The defendant, who had previously been convicted of various crimes in connection with his involvement in engaging police in a high speed pursuit, which resulted in the death of one police officer, appealed from the trial court's judgments denying his motions for sentence modification. The defendant claimed that the court abused its discretion in finding that he had failed to establish good cause to modify his sentences. *Held*:

The trial court did not abuse its discretion in how it weighed the various factors it considered in denying the defendant's motions for sentence modification, specifically, evidence of the defendant's rehabilitation, sobriety, and familial relationships, and victim impact testimony and statements, as the court's weighing of those factors was consistent with the broad discretion afforded to it in ruling on such a motion, and the court reasonably found that the defendant did not establish good cause in light of other factors, including the seriousness of his crimes, his extensive criminal history, his behavior while incarcerated, and the impact of the defendant's crimes on the victims, law enforcement personnel and the deceased officer's widow and children.

The trial court did not abuse its discretion in relying on the defendant's postconviction efforts to challenge his conviction through appeals and habeas corpus proceedings in its analysis of the evidence of the defendant's remorse, as it was within the court's discretion to weigh the information before it and to determine whether it deemed any remorse expressed by the defendant to be genuine, and the court's denial of the defendant's motions was a denial of leniency, not a punishment.

The trial court did not overlook mitigating evidence consisting of letters of support from the defendant's family and friends in favor of undue emphasis on static factors, such as the seriousness of the defendant's underlying offenses and criminal history, as the court reasonably considered all of the information before it and determined that the letters were outweighed by the gravity of the defendant's conduct and its continuing effect on the victims, as well as the defendant's extensive criminal history.

Argued January 6—officially released May 5, 2026

*Procedural History*

Substitute information, in the first case, charging the defendant with the crimes of burglary in the first degree, larceny in the third degree, attempt to commit larceny in the third degree, conspiracy to commit, inter alia, burglary in the first degree and disregarding an officer's

signal and, substitute information, in the second case, charging the defendant with the crimes of felony murder, manslaughter in the first degree and misconduct with a motor vehicle and, substitute information, in the third case, charging the defendant with the crime of interfering with an officer and, substitute information, in the fourth case, charging the defendant with two counts each of the crimes of attempt to commit assault in the first degree, attempt to commit assault of a peace officer and criminal mischief in the first degree, and with one count of the crime of reckless endangerment in the first degree and, substitute motor vehicle complaint charging the defendant with the crimes of reckless driving and engaging police in pursuit, brought to the Superior Court in the judicial district of Middlesex, geographical area number nine, where the cases were consolidated for trial and tried to the jury before *Clifford, J.*; verdicts of guilty of larceny in the third degree, attempt to commit larceny in the third degree, conspiracy to commit burglary in the third degree and larceny in the third degree, disregarding an officer's signal, misconduct with a motor vehicle, interfering with an officer, criminal mischief in the first degree, attempt to commit assault of a peace officer, reckless driving and engaging an officer in pursuit; thereafter, the court denied the defendant's motion for a judgment of acquittal and rendered judgments in accordance with the verdicts, and the defendant appealed to this court, *Dranginis*, *Flynn* and *Hennessy, Js.*, which affirmed the judgments; subsequently, the court, *Baldini, J.*, denied the defendant's motions for sentence modification, and the defendant appealed to this court. *Affirmed*.

*J. Patten Brown III*, assigned counsel, for the appellant (defendant).

*Raynald A. Carre*, deputy assistant state's attorney, with whom, on the brief, was *Michael Gailor*, state's attorney, for the appellee (state).

*Opinion*

SEELEY, J. The defendant, Bryant Browne, appeals from the judgments of the trial court denying his motions

for sentence modification pursuant to General Statutes §53a-39. On appeal, the defendant claims that the court abused its discretion in finding that he had failed to establish good cause to modify his sentences. We disagree and, accordingly, affirm the judgments of the court.

The following facts related to the defendant's underlying convictions, as set forth by this court on his direct appeal, and procedural history are relevant to this appeal. "On January 28, 2000, the defendant was an unemployed drug addict with a $40 a day heroin habit. That morning, he met his accomplice, Victor Santiago,[1] in New Haven and drove to Middletown. At approximately 11:30 a.m., the pair forcibly entered the unoccupied home of the Fraulino family. They ransacked the house, collecting jewelry, cash and electronic equipment. Shortly thereafter, Rosemary Fraulino returned home and observed an unfamiliar motor vehicle in the driveway. She did not stop at her house but instead called the police on her cellular telephone to alert them to the suspicious occurrence.

"John Labbadia, a Middletown police officer, responded to the scene and partially blocked the defendant's vehicle in the driveway. The defendant and Santiago saw Labbadia arrive. When the officer walked to the rear of the house, they abandoned some of the Fraulinos' possessions in the living room and foyer. The defendant got into his vehicle and sped away with his accomplice.

"Labbadia, believing that he had interrupted a burglary, radioed the police dispatcher. He pursued the defendant and Santiago on back roads and side streets to Route 9. George Dingwall, a sergeant on the Middletown police force, heard Labbadia's broadcast and joined the pursuit. A Portland police officer also heard Labbadia's broadcast. Three police cruisers with lights and sirens activated followed the defendant's vehicle south on Route 9 at a high rate of speed.

---

[1] "Santiago was tried separately." *State* v. *Browne*, 84 Conn. App. 351, 356 n.3, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

The state police had been alerted, and a number of troopers positioned themselves at exit six on Route 9. One trooper placed stop sticks[2] across a lane of the highway, but the defendant successfully avoided them. Several troopers then joined the chase. The defendant operated his vehicle in an erratic manner back and forth across the highway.

"Near exit four in Essex, Dingwall drove his cruiser beside the defendant's vehicle. The defendant swerved his vehicle toward Dingwall's vehicle. Dingwall lost control of his cruiser, which spun around and off the highway, crashing in a heavily wooded portion of the median.

"The defendant continued to drive south on Route 9 at a high rate of speed. Scott Wisner, a state trooper, positioned his cruiser alongside the defendant's vehicle. The defendant swerved toward Wisner's cruiser, striking it. Wisner dropped back, and Labbadia moved his cruiser ahead of the defendant's vehicle. The defendant's car struck the rear of Labbadia's cruiser, which also spun out of control and off the highway. The defendant then drove onto Interstate 95 southbound.

"The state police responded in force. One trooper preceded the pursuit and warned motorists to move off the highway. State troopers used their cruisers to block the entrance ramps to the interstate highway. At exit sixty-seven, the state troopers deployed stop sticks again, but the defendant veered off the roadway to avoid them. At exit sixty-three in Clinton, police cruisers were parked in the gore between the exit and entrance ramps to the highway. State troopers were standing in the gore in another effort to deploy stop sticks. The defendant saw the trap and drove off the highway through the gore, coming dangerously close to the troopers standing there. He drove onto the entrance ramp and back onto the highway.

---

[2] "Stop sticks are hollow spikes attached to a rollout strip that police officers can throw across a highway to stop fleeing vehicles. When a tire passes over a stop stick, the stop stick punctures the tire and causes it to deflate slowly." *State* v. *Browne*, 84 Conn. App. 351, 356–57 n.4, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

"The defendant continued to weave through traffic. Between exits fifty-nine and fifty-eight in Guilford, Adam Brown, a state trooper, successfully deployed stop sticks under the tires of the defendant's vehicle. Nevertheless, the defendant kept going and at exit fifty-seven attempted to force Robert Hart, a state trooper, off the highway. The defendant stopped his vehicle, which was traveling on the rims of its wheels, against the Jersey barriers near exit fifty-four in Branford.

"When the defendant got out of his vehicle, he said, 'I'm on drugs, man—real bad—I'm on drugs.' Personalty belonging to the Fraulino family was found in the defendant's vehicle. As a state trooper was transporting the defendant to the state police barracks in Westbrook, a police radio dispatch broadcasted information that Dingwall had been transported to a hospital by Life Star helicopter. In response, the defendant made several unsolicited remarks: 'It's not my fault; I'm on drugs; you can't blame me for any of this because I'm on drugs.' Dingwall died as a result of his injuries." (Footnotes in original.) *State* v. *Browne*, 84 Conn. App. 351, 355–58, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004).

"The defendant was charged in five informations with numerous criminal and motor vehicle violations, which were consolidated for trial. The jury convicted him of larceny in the third degree in violation of General Statutes §§ 53a-124 (a) (2) and 53a-119, attempt to commit larceny in the third degree in violation of General Statutes §§ 53a-49 (a), 53a-124 (a) (2) and 53a-119, conspiracy to commit burglary in the third degree in violation of General Statutes §§ 53a-48 (a) and 53a-103, conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 (a) and 53a-124, disregarding an officer's signal by engaging an officer in a pursuit resulting in death in violation of General Statutes § 14-223 (b), interfering with an officer in violation of General Statutes § 53a-167a (a), attempt to commit assault of a peace officer in violation of General Statutes §§ 53a-49 (a) (2) and 53a-167c (a) (1), criminal mischief in the

first degree in violation of General Statutes § 53a-115 (a) (1), misconduct with a motor vehicle in violation of General Statutes § 53a-57, reckless driving in violation of General Statutes § 14-222 and engaging an officer in pursuit in violation of General Statutes § 14-223 (b). The defendant's total effective sentence was thirty-two years in the custody of the [C]ommissioner of [C]orrection."[3] Id., 354 n.1.

On January 16, 2024, the defendant filed multiple motions[4] seeking a modification of his sentence in which he requested that the court reduce his total effective sentence by six years. In support of the motions, the defendant's attorney submitted a letter in which he represented that the defendant had "completed his education [and] critical drug treatment programming," and that the defendant had "done everything in his ability to rehabilitate and prepare to successfully reintegrate into society." The attorney further asserted in the letter that the defendant's "complete and successful rehabilitation, coupled with his education, work ethic, and support system constitute good cause to reduce his sentence." The defendant submitted materials in support of his motions, such as certificates from programs he had completed during his incarceration, work appraisals from periods of incarceration, a handwritten letter from him,[5] and letters of support from the defendant's family members.

The court, *Baldini, J.*, held a hearing on the motions on April 23, 2024. During the hearing, the court heard

_____

[3] The jury acquitted the defendant "of burglary in the first degree, conspiracy to commit burglary in the first degree, felony murder, manslaughter in the first degree, criminal mischief in the first degree and two counts of attempt to commit assault in the first degree. The jury was unable to reach a verdict on the charges of attempt to commit assault of a peace officer and reckless endangerment in the first degree, and the court declared a mistrial as to those counts." *State* v. *Browne*, supra, 84 Conn. App. 355 n.2. The defendant was sentenced on March 12, 2002.

[4] The motions corresponded to the underlying criminal and motor vehicle cases under which the defendant was convicted.

[5] In his handwritten letter dated February 12, 2023, the defendant stated: "I . . . accept full responsibility for all of the bad decisions that I made on [January 28, 2000], including not stopping for the Middletown

from the defendant, his brother, and his attorney, as well as the state and Kim Raymond, Dingwall's widow. A letter from Wisner in opposition to the defendant's motions also was read to the court at the hearing.

On May 7, 2024, the court issued a memorandum of decision denying the defendant's motions to modify his sentence. In its decision, the court explained that, "[i]n evaluating the defendant's motion[s], the court . . . considered a variety of factors, some static, and others variable. The static factors the court . . . considered include: **(1)** the seriousness of the offenses for which the defendant was convicted; **(2)** the defendant's prior criminal history; and **(3)** the defendant's employment, treatment, and family history prior to his present incarceration. The variable factors the court . . . considered [were] factors that center on the timeframe following his convictions. These factors include: **(1)** whether the defendant has expressed remorse; **(2)** whether the defendant has engaged in efforts to rehabilitate himself while incarcerated; **(3)** whether the defendant has contributed to the welfare of others while incarcerated; **(4)** whether family, friends, or community members support the defendant and the defendant's sentence modification request; **(5)** the length of time the defendant has been incarcerated and any disciplinary history while incarcerated; and **(6)** and the victims' positions with respect to the sentence modification motion."

The court identified "the seriousness of the crimes committed" and "[t]he impact of the defendant's actions" as important factors in its decision. The court noted: "[The defendant's] actions on January 28, 2000, set into

and state police. I come from a hardworking and honest family background. My using drugs and my addiction had made it impossible for me to stay clean or sober for many years prior to and leading up to [January 28, 2000]. [January 28, 2000], was the last day I used drugs. My family and I have been dev[a]stated by this loss of life. I have remained drug free for [twenty-three] years, on my own, without any help or assistance from the [Department of Correction]. This [has] been the longest I have been clean and sober in many years. I can do better; I will do better. I have [two] granddaughters that I have never met and a son that needs my help to raise them."

motion a series of events, which significantly impacted the lives of many, including the owners of the home that the defendant stole from, the many law enforcement officials who risked their lives to keep the public safe and aided in the apprehension of the defendant, members of the public who witnessed the traumatic events, and the multiple victims of these crimes, including . . . Labbadia . . . Wisner . . . Dingwall, and . . . Dingwall's family. The defendant committed multiple criminal acts evidencing a pure disregard for others and the law. He attributes his criminal conduct to his drug use, but his decision to ingest drugs was a volitional one and so were the actions that ensued thereafter."

With respect to the impact that the defendant's crimes had on his victims and their communities, the court explained that, "[i]n . . . Wisner's statement, he reflected upon the events of January 28, 2000, the dangerousness of the defendant's conduct, and the effect the defendant's actions has had upon him and his fellow law enforcement officers. . . . Raymond, the victim's widow, tearfully discussed how her family continues to suffer the loss of her late husband. . . . Dingwall was a hard-working family man who served proudly for nineteen years . . . as a member of the Middletown Police Department. He was eleven . . . months away from retirement and aspired to become a teacher. He had two children, a son and a daughter, who were nine . . . years old and twelve . . . years old when he died. Today, his children are thirty-four . . . and thirty-seven . . . years old and they have been cheated out of the opportunity to have a relationship with their father. Raymond described the 'forever loss' that she and her family experience, noting that holidays, celebrations, and even regular days are never quite the same. Despite the passage of twenty-four . . . years, the pain of losing . . . Dingwall endures and the defendant's actions on January 28, 2000, continue to impact the lives of many."

The court next rejected the defendant's claim that he has shown true remorse for his actions, in part, because

he continues to challenge his convictions. Specifically, the court reasoned that "[t]he defendant's claim that he accepts full responsibility for his actions is undermined by [his] many efforts to challenge the propriety of his conviction[s]," including the direct appeal in which this court affirmed the defendant's convictions. The court mentioned subsequent challenges to the defendant's convictions, including "multiple habeas corpus petitions, claiming insufficiency of counsel by his trial, appellate, and habeas attorneys, including one petition that remains pending. [See] *Browne* v. *Commissioner of Correction*, 158 Conn. App. 1, 125 A.3d 1014, cert. denied, 318 Conn. 906, 122 A.3d 634 (2015); *Browne* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-16-4007855-S (May 10, 2023) (*Newson, J.*). In these matters, the defendant has raised claims that his attorneys were ineffective for failing to employ an expert witness to challenge the state's theories of causation and intent as to the death of . . . Dingwall and failing to retain an expert to ascertain the value of the items stolen during the residential burglary. Additionally, the defendant has claimed that the three officers who testified about the defendant's conduct [that] led to . . . Dingwall's death were 'untruthful' in their testimony. In 2022, he applied for a sentence commutation, and it was determined that he did not meet the criteria for a commutation. The court acknowledges and appreciates the defendant's right to pursue postjudgment relief, however, the claims raised in these proceedings undermine the defendant's representations that he fully accepts responsibility for his actions. In addition, when presented with the opportunity to apologize to the many victims of his crimes at the hearing on his motion, the defendant declined to do so." As a result, the trial court concluded that the defendant "ha[d] not demonstrated sincere regret for the crimes he has committed."

The court also rejected the defendant's claim that he is " 'fully rehabilitated'." Specifically, although the defendant submitted a certificate for his general equivalency degree (GED), the court found that he had not completed

his education while incarcerated for the underlying convictions but, rather, obtained his GED in the 1980s while incarcerated in Massachusetts. The court also found that "several of the program certificates the defendant submitted to support his claim that he is rehabilitated were not for programs completed during his present incarceration."

The court noted that, even though the defendant had "served a substantial portion of his sentence—twenty-four . . . years—[and] . . . ha[d] maintained various employment positions while incarcerated and received 'good' to 'excellent' ratings from his supervisors," he "made limited efforts to address the obstacles that have contributed to his incarceration. The documents provided by the defendant show that, in the time that the defendant has been incarcerated, he completed only three programs: the People Empowering People program (2014–2015), the Beyond Fear program (2012), and an anger management program (2023). Several of the program certificates the defendant submitted to support his claim that he is rehabilitated were not for programs completed during his present incarceration. Instead, they are for programs that the defendant completed *prior to* his present incarceration." (Emphasis in original.) Moreover, the court found that the defendant had not submitted adequate documentation demonstrating that he had "completed 'critical drug treatment programming' during his present incarceration," as "[t]he documentation provided show[ed] that the defendant received substance abuse treatment while incarcerated in Connecticut and Massachusetts *prior to* committing the offenses for which he was convicted." (Emphasis in original.) As a result, the court concluded that "[i]t [was] evident that the defendant ha[d] demonstrated minimal efforts to avail himself of opportunities for growth, rehabilitation, and contribution while incarcerated for these offenses. Moreover, it is apparent that rehabilitative efforts prior to the commission of the crimes for which he is incarcerated were not significant enough

to rehabilitate him or to deter him from engaging in criminal behavior."

Next, the court acknowledged the letters that it had received in support of the defendant's sentence modification. Specifically, the court noted that "[i]t is undisputed that the defendant has a loving and closely connected family who remain committed to assisting the defendant and to supporting him upon his release. Many of the letters suggest that the punishment that the defendant received for his actions is disproportionate and draconian. See letters from Ina Webb Bryant (the defendant 'has not been convicted of manslaughter or murder but for running from the police'); Alexis Soares ('the prison system should be one of rehabilitation, rather than perpetual retribution . . . [and] one horrible action in a dark moment of someone's life should not define who they are forever'); [and] Debra Canzater ('I am praying that the court finds it in their heart to grant him an early release due to a bad decision he made over twenty years ago'). It is obvious that these advocates are unaware of the defendant's robust and abhorrent criminal history."

Finally, the court found that the defendant was not able to "remain at liberty without violating the law" and noted that "[t]he defendant has a multistate criminal history that dates back to 1986."[6] Moreover, the court emphasized the fact that the defendant was on parole when he was arrested for the present offenses and was involved in a police car chase one month before he engaged in the conduct giving rise to his present incarceration. The defendant also was convicted and sentenced for other crimes, including, "on March 28, 2002, [he] was

---

[6] In addition to the eleven offenses of which the defendant was convicted with respect to his present incarceration, the court found that he had "at least thirty-three . . . other convictions, [including] . . . twelve . . . burglary convictions, five . . . breaking and entering convictions, four . . . failure to appear convictions, three . . . larceny convictions, two . . . possession of narcotics convictions, one . . . robbery conviction, one . . . escape conviction, and one . . . engaging police in pursuit conviction," which was one of the same charges of which he was convicted of in relation to the present matter.

convicted of [attempt to commit] assault on a public safety officer in violation of [General Statutes] § 53a-167c [for which he was] sentenced to twenty-five . . . months to be served concurrently to the present sentence," and, "[o]n November 21, 2002, [he] was convicted of reckless endangerment in the first degree in violation of General Statutes § 53a-63 [for which he was] sentenced to seven . . . months to be served consecutively to the present sentence. These convictions relate[d] to additional criminal conduct by the defendant on January 28, 2000."

The court also took note of the defendant's continued "misconduct notwithstanding his incarceration," including his December 7, 2012, conviction of criminal contempt of court in violation of General Statutes § 51-33a, for which he was sentenced to six months of incarceration, which was to be served consecutively to the present sentence.[7] Further, the court detailed the five disciplinary tickets that were issued to the defendant during his present incarceration, with the most recent one having been issued in 2016.[8] The court ultimately concluded that "[t]he defendant has demonstrated that he is not amenable to rehabilitation and is not deterred by punishment," thus, that he "ha[d] not established good cause to modify [his] sentence." This appeal followed.

We begin with our standard of review and the relevant legal principles that guide our resolution of this appeal. "[General Statutes §] 53a-39 (a) provides: Except as provided in subsection (b) of this section, at any time during an executed period of incarceration, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation

---

[7] When asked at the hearing to elaborate on the conduct that gave rise to his conviction of criminal contempt of court, the defendant stated that he had a "little discussion with the judge and that's what he did." No further explanation was offered.

[8] The court indicated that "[t]he offenses for which the tickets were issued were for interfering with safety and security (2001), disobeying a direct order (2003), fighting (2008), security tampering (2012), and public indecency (2016)."

or conditional discharge for a period not to exceed that to which the defendant could have been originally sentenced. [I]n arriving at its sentencing determination, the sentencing court may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come. . . . [T]his broad discretion applies with equal force to a sentencing court's decision regarding a sentence modification . . . . *State* v. *Dupas*, 291 Conn. 778, 783, 970 A.2d 102 (2009). Accordingly, we review a court's judgment granting or denying a motion to modify a sentence for abuse of discretion. See id. An abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . *State* v. *Rivera*, 200 Conn. App. 487, 493, 240 A.3d 728 (2020), aff'd, 343 Conn. 745, 275 A.3d 1195 (2022). As such, [i]n determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Generally speaking, under this deferential standard, [w]here the trial court has properly considered all of the offenses proved and imposed a sentence within the applicable statutory limitations, there is no abuse of discretion. . . . *State* v. *Dupas*, supra, 783." (Footnotes omitted; internal quotation marks omitted.) *State* v. *Martin G.*, 222 Conn. App. 395, 403–404, 305 A.3d 324 (2023), cert. denied, 348 Conn. 944, 308 A.3d 34 (2024).

On appeal, the defendant claims that the trial court abused its discretion in finding that he did not establish good cause to warrant a sentence modification. The defendant raises a number of arguments in support of his claim, which we address in turn.

I

We first address the defendant's challenge to the weight the court afforded to evidence of his rehabilitation, sobriety, and familial relationships, and to victim

impact testimony and statements.[9] The defendant argues that good cause existed to modify his sentence in part because, while incarcerated, he had engaged in programs, received positive work assessments, and maintained sobriety. He contends that the court, however, "minimized [his] rehabilitation efforts," especially given that Connecticut policy restricts the availability of "certain programs" to inmates nearing a discharge or parole date, and improperly relied on disciplinary tickets that he had received while incarcerated as evidence of his inability to follow the law. He further contends that those disciplinary tickets did not undermine his claim of good cause because they were issued for "minor administrative matters" that were nonviolent in nature and not related to drugs.[10]

In a similar fashion, the defendant also asserts that the court "discounted the effort necessary for [him] to achieve and maintain sobriety and loving relationships with his family," especially in light of the uncontroverted evidence of his sustained sobriety, the letters of support from family and community members, and the testimony from his brother at the hearing regarding a plan for the defendant's reentry into society. Finally, although he recognizes that "victim impact statements are an essential component of sentence modification proceedings," the defendant argues that the court "placed disproportionate weight on the [written statement] of . . . Wisner" and that the victim impact statements should have been "balanced against the broader penological objectives of sentencing." As a result, he contends that the court's "undue emphasis on these statements led to an unbalanced evaluation of the 'good cause' standard." We are not persuaded that the court abused its discretion in its weighing of this evidence.

[9] In part II of this opinion, we address separately the defendant's claim that the court improperly discounted the evidence demonstrating his remorse.

[10] The defendant's assertion in his appellate reply brief that the state mischaracterized the nature of his institutional conduct, including his disciplinary history, is unavailing and unsupported by the record.

As we have indicated, the court set forth in its decision a variety of factors that it considered in denying the defendant's motions for sentence modification. Many of those factors are similar to factors that are considered by the Board of Parole and Pardons (parole board) in reviewing applications for parole. See *State* v. *Brelsford*, 227 Conn. App. 53, 62, 319 A.3d 763 ("in reviewing applications for sentence modifications of definite sentences, [the sentencing court] performs a function similar to that of a parole board . . . and [this court] has affirmed the consideration of [factors set forth in the statute governing parole eligibility, General Statutes] § 54-125a (f) (4) . . . when considering sentence modifications" (citation omitted; internal quotation marks omitted)), cert. denied, 350 Conn. 912, 324 A.3d 142 (2024); see also *State* v. *Toste*, 231 Conn. App. 866, 873, 334 A.3d 1083 (it is appropriate for trial court, when ruling on motion for sentence modification, to consider statutory factors considered by parole board when deciding to grant parole), cert. granted on other grounds, 352 Conn. 908, 336 A.3d 81 (2025).[11]

With respect to the court's consideration of the evidence of the defendant's rehabilitation, the court acknowledged the defendant's participation in three

[11] Those factors include whether "(A) there is a reasonable probability that such person will live and remain at liberty without violating the law, (B) the benefits to such person and society that would result from such person's release to community supervision substantially outweigh the benefits to such person and society that would result from such person's continued incarceration, and (C) such person has demonstrated substantial rehabilitation since the date such crime or crimes were committed considering such person's character, background and history, as demonstrated by factors, including, but not limited to, such person's correctional record, the age and circumstances of such person as of the date of the commission of the crime or crimes, whether such person has demonstrated remorse and increased maturity since the date of the commission of the crime or crimes, such person's contributions to the welfare of other persons through service, such person's efforts to overcome substance abuse, addiction, trauma, lack of education or obstacles that such person may have faced as a child or youth in the adult correctional system, the opportunities for rehabilitation in the adult correctional system, whether the person has also applied for or received a sentence modification and the overall degree of such person's

programs and his positive work assessments while incarcerated but, nevertheless, found that, during the course of the twenty-four years of his incarceration that he has served, he "made limited efforts to address the obstacles that have contributed to his incarceration." The court reached this conclusion, in part, because much of the evidence submitted by the defendant concerning his rehabilitative efforts involved programs or education completed *prior to* his present incarceration. As a result, the court found that the efforts made by the defendant during his present incarceration were "minimal," and that any prior rehabilitative efforts were insufficient in light of his engagement in the criminal conduct underlying his convictions for which he is presently incarcerated. Although the defendant contends that he had limited opportunities for rehabilitation during the past twenty-four years of his incarceration, he does not contest that he participated in only three programs during his present incarceration; moreover, this was but one factor in the court's analysis of the overall degree of the defendant's rehabilitation.

In assessing the rehabilitation evidence, the court also properly took into consideration the defendant's correctional record, which included five disciplinary tickets that were issued to the defendant during his present incarceration, as well as his conviction of criminal contempt of court and other crimes related to his criminal conduct on January 28, 2000. Although the defendant contends that the tickets were issued for nonviolent conduct, they nonetheless were evidence of the defendant's conduct while incarcerated, and the defendant has not cited any authority demonstrating that they should not have factored into the court's decision. The court's decision regarding the defendant's rehabilitation also was made with due consideration for the defendant's multistate criminal history dating back to 1986, which includes at least thirty-three other convictions in addition to the convictions underlying his motions, as well as the fact

rehabilitation considering the nature and circumstances of the crime or crimes." General Statutes § 54-125a (f) (4).

that the defendant was on parole when he was arrested for the present offenses and was involved in a police chase one month before he engaged in similar conduct giving rise to his present incarceration. As a result of this evidence, the court concluded that the defendant was not able to "remain at liberty without violating the law," and that he "has demonstrated that he is not amenable to rehabilitation and is not deterred by punishment." These considerations properly factored into the court's determination as to whether the defendant demonstrated good cause for a modification of his sentence.

To the extent that the defendant is arguing that the court should have given specific weight to his "rehabilitation efforts," he has provided no authority to support such an argument. Moreover, our Supreme Court rejected a similar argument in *State* v. *Dupas*, supra, 291 Conn. 786. In *Dupas*, the defendant appealed from the denial of his application for sentence modification, claiming that the trial court abused its discretion because "the court's decision 'assigned no value' to the defendant's postsentence cooperation with the state. Put another way, the defendant . . . argue[d] that because his original sentence was determined prior to his cooperation with the state, his subsequent cooperation *required* that the sentencing court reduce his sentence, and that the court had discretion only as to the amount of the reduction." (Emphasis in original.) Id. The defendant's claim in *Dupas* was based on the fact that the trial court did not expressly state in its memorandum of decision why it had determined that the defendant's postsentence cooperation was not sufficient to warrant a reduction of his sentence. Id., 786–87. Our Supreme Court rejected the defendant's claim, holding that, "although the court did not explain precisely why it had considered evidence of the defendant's cooperation insufficient to justify a reduction in the defendant's sentence, it is clear from the memorandum of decision that the court considered that cooperation in ruling on the motion. The memorandum of decision also clearly stated the basis for the court's denial of the motion—the heinous nature of the crime

and the defendant's involvement in it. A reasonable interpretation of the memorandum of decision is that the court considered the defendant's cooperation, but deemed that cooperation insufficient, in light of the heinous nature of the crime . . . ." Id., 787.

Similarly, in *State* v. *Brelsford*, supra, 227 Conn. App. 63, this court held that, "[a]lthough the defendant argues that the [trial] court should have relied more heavily on his rehabilitation and certain other factors, he does not cite any legal authority that governs the degree of weight a court must afford factors that it considers in determining whether good cause has been established, *nor are we aware of any*. Here, the court expressly considered the steps the defendant has taken toward rehabilitation but concluded that those steps did not outweigh other factors that it considered. The court's consideration of all of these factors was consistent with the broad discretion afforded to courts in ruling on motions for sentence modification." (Emphasis added; footnote omitted.)

In the present case, the defendant also has not directed this court to any authority governing the degree of weight that a trial court must afford to the factors it considers in its good cause determination. Likewise, it is clear from the court's memorandum of decision that it did consider the defendant's rehabilitation but found that the defendant did not establish good cause in light of other factors, including the serious nature of his crimes, which the court found to be "an important factor in its determination," and because the defendant's rehabilitation was minimal and the materials he provided did not sufficiently demonstrate that he had "avail[ed] himself of opportunities for growth, rehabilitation, and contribution while incarcerated for these offenses." See *State* v. *Brelsford*, supra, 227 Conn. App. 63; see also *State* v. *Martin G.*, supra, 222 Conn. App. 406 (trial court did not abuse its discretion in finding that defendant did not establish good cause for sentence modification in light of gravity of defendant's conduct and its continuing effect on victim and victim's family, which outweighed

defendant's rehabilitative efforts). Consequently, we are unpersuaded by the defendant's argument that the court improperly weighed the rehabilitation evidence against the nature and circumstances of his crimes and the impact of the defendant's crimes on his victims.

The record also shows that the court specifically acknowledged the defendant's remarks to the court at the hearing that he has remained sober and his "good to excellent" work ethic during incarceration, as well as his positive work appraisals. The court also "considered the numerous letters written in support of the defendant's" motions for sentence modification and recognized that it was "undisputed that the defendant has a loving and closely connected family who remain committed to assisting the defendant and to supporting him upon his release." Nevertheless, the court also found that the contents of many of the letters suggested that the defendant's punishment was disproportionate to his actions, and, in making that finding, it specifically referred to statements in letters submitted by the defendant, which led the court to conclude that the persons making the statements were "unaware of the defendant's robust and abhorrent criminal history."[12] The defendant's sobriety and his familial support system did factor into the court's decision, but as we have indicated, the court considered a multitude of factors in reaching its decision, and it necessarily must have determined that other factors outweighed the progress the defendant has made with his sobriety and the support system he would have from family members upon his release from incarceration. In his appellate briefs, the defendant fails to explain how, or provide support for why, the court abused its discretion in this respect.

---

[12] At the hearing, the court stated that, when it read the letters, a few of them stood out because they suggested that the conduct underlying the defendant's convictions and sentences was "a one-time event . . . ." The court noted further that the persons who submitted the letters were perplexed that someone would receive sentences like the one imposed on the defendant "for a one-time event . . . ." After making those comments, the court asked the defendant's counsel if those people were aware of the defendant's history, to which counsel replied: "I don't believe they were fully as aware . . . ."

The defendant's briefing of his argument that the court placed disproportionate weight on the victim impact testimony and statements is equally devoid of authority or legal analysis demonstrating how the court abused its discretion in its weighing of this evidence. In his appellate reply brief, the defendant asserts that "§ 53a-39 (a) makes clear that sentence modification remains available even for serious crimes, provided good cause is shown," and that "[t]o allow victim impact *alone* to eclipse rehabilitation evidence would render the statutory scheme illusory for any individual convicted of a violent or high-profile offense." (Emphasis added.) This argument lacks merit for two reasons. First, there is nothing in the record establishing that the court relied solely on the victim impact testimony or statements in reaching its determination that good cause had not been established, as it is clear from the court's decision that it considered a number of factors and all of the evidence and information before it. Second, even if the court afforded more weight to the victim impact testimony and statements, the defendant has not directed this court to any authority demonstrating why that would constitute an abuse of the court's discretion. See *State* v. *Brelsford*, supra, 227 Conn. App. 63. In fact, this court previously has found no abuse of discretion in a trial court's weighing of the relevant sentencing factors when the trial court "concluded that the circumstances the defendant presented in support of his [requested sentence modification] did not rise to the level of good cause *in light of the seriousness of the offenses* [and] the *impact on the victim's family* . . . notwithstanding the fact that [the defendant had] served in excess of the twenty-five year mandatory minimum . . . . See . . . *State* v. *Martin G.*, [supra, 222 Conn. App. 406] (the court conducted an appropriate review of the information before it and determined that the gravity of the defendant's conduct, and its continuing effect on the victim and her family, outweighed the rehabilitative efforts he has undertaken since his incarceration) . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Toste*, supra, 231 Conn. App. 875–76.

In the present case, the court viewed the seriousness of the defendant's crimes to be an important factor, stating that the defendant's actions, which evidenced "a pure disregard for others and the law," "set into motion a series of events [that] significantly impacted the lives of many," including the owners of the home he burglarized, law enforcement personnel, "members of the public who witnessed the traumatic events, and the multiple victims of [his] crimes . . . ." The statement submitted by Wisner and the testimony from Raymond impressed on the court the dangerousness of the defendant's conduct and the enduring painful impact it has had on their lives, as well as the lives of fellow law enforcement officers and Dingwall's children, who, as the court found, were "cheated out of the opportunity to have a relationship with their father."

As we have stated in this opinion, the trial court has wide discretion in determining whether a defendant's sentence should be modified. See *State* v. *Martin G.*, supra, 222 Conn. App. 404. The record demonstrates that the court reasonably considered all of the information before it and determined that the defendant failed to establish good cause to modify his sentence after weighing the various factors concerning the defendant's rehabilitation, sobriety, familial relationships and support system, his extensive criminal history and behavior while incarcerated, the serious nature of the crimes of which he was convicted, and the impact of the defendant's crimes on the victims, law enforcement personnel and Dingwall's widow and children. In doing so, the court, which noted that "[t]he defendant's actions have had, and continue to have, a profound impact on the victims and the community," necessarily determined that any rehabilitative efforts by the defendant were outweighed by the gravity of his conduct and its impact on the victims. Contrary to the defendant's claims, the court's decision in that respect does not undermine the rehabilitative efforts that he has achieved or any positive steps he has taken during his period of incarceration; rather, those efforts must be considered in light of the other factors,

which, in this case, weighed heavily against a sentence modification.

We conclude that the court's weighing of the factors was "consistent with the broad discretion afforded to it in ruling on a motion for sentence modification. See, e.*g.*, *State* v. *Martin G.*, [supra, 222 Conn. App. 406] (court did not abuse its discretion in determining that defendant failed to establish good cause to warrant sentence modification where gravity of defendant's conduct and its continuing effect on victim and her family outweighed defendant's rehabilitative efforts) . . . see also *State* v. *Brelsford*, supra, 227 Conn. App. 63–64 (rejecting defendant's claim that court should have relied more heavily on rehabilitative efforts and holding that court did not abuse its discretion in determining that defendant failed to establish good cause to warrant sentence modification where defendant's rehabilitative efforts did not outweigh factors weighing against sentence modification)." *State* v. *Reyes*, 229 Conn. App. 121, 128, 326 A.3d 589, cert. denied, 350 Conn. 934, 327 A.3d 385 (2024); see also *State* v. *Toste*, supra, 231 Conn. App. 875 ("[i]t was within court's discretion to weigh all of the information before it to determine whether the defendant established good cause to justify a modification of his sentence").

It appears from the arguments raised in the defendant's appellate briefs that he is, in effect, asking this court to reevaluate and weigh the evidence to reach a different conclusion. That, however, is not our role on an appeal from a denial of a sentence modification. Rather, as we already have indicated, "we review a court's judgment granting or denying [a motion for a] . . . sentence [modification] for abuse of discretion. An abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Internal quotation marks omitted.) *State* v. *Toste*, supra, 231 Conn. App. 870. "[E]very reasonable presumption should be given in favor of the correctness of the court's ruling." (Internal quotation

marks omitted.) Id.; see also id. (§ 53a-39 (a) "does not limit the information a court may consider in determining whether a defendant has shown good cause for the requested modification, nor does it suggest that the court's discretion is somehow limited" (internal quotation marks omitted)). In the present case, affording every reasonable presumption in favor of the court's ruling, we cannot conclude that the court abused its discretion in how it weighed the various factors.

## II

Next, the defendant argues that the court improperly "discounted" evidence of his remorse. Specifically, he contends that the court discounted the remorse he expressed in his letter, and that the court's analysis of the remorse evidence was improperly influenced by its reliance on the defendant's postconviction efforts to challenge his convictions through appeals and habeas corpus proceedings. In a few sentences in his principal appellate brief, without citation to legal authority or substantive analysis, the defendant asserts that, although "the court acknowledged the [defendant's] right to seek postjudgment relief, it improperly concluded that such actions undermined [the defendant's] expression of remorse," and that "[t]he pursuit of legal remedies is a constitutionally protected right and does not inherently negate genuine remorse for one's actions." In his appellate reply brief, he further asserts that he "cannot be penalized" for having invoked his constitutional rights, and he cites *North Carolina* v. *Pearce*, 395 U.S. 711, 725, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled on other grounds by *Alabama* v. *Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989), for the proposition that "[d]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."

Our analysis of this argument requires little discussion. In its decision, the court stated that "[r]emorse is not just a feeling or expression; it is a genuine change

in behavior or attitude. While words can be easily said, actions require effort and commitment that demonstrate a true willingness to change and make amends. Consistent actions that show accountability, empathy, and efforts to repair harm caused by the wrongdoing provide tangible evidence of remorse." Although the defendant contends that his letter and the letters from his family submitted in support of his motions sufficiently demonstrate his remorse for his actions, the court also had before it Wisner's letter, in which he stated: "I would like to think in retrospect [the defendant] feels as if the decisions he made that day were the worst he has made in life. I am unaware of any show of remorse on his behalf directed toward any of the law enforcement officers and affected family members since this occurrence. In this case, his failure to extend any type of remorseful message has worked against him, as any apologetic indication would have substantially tempered my remarks in this venue." Moreover, although, at the hearing, the defendant's brother offered an apology to the Dingwall family on behalf of the defendant's family, the defendant himself, in his statements to the court at the hearing and in his written statement, offered no such apology. It was within the court's discretion to weigh the information before it and determine whether it deemed any remorse expressed by the defendant to be genuine.

The court also stated that "[t]he defendant's claim that he accepts responsibility for his actions is undermined by the many efforts [he has taken] to challenge the propriety of his convictions." As examples, the court referenced the defendant's appeal from his convictions and the multiple habeas petitions that he has pursued. The court stated further: "The court acknowledges and appreciates the defendant's right to pursue postjudgment relief, however, the claims raised in [those] proceedings undermine the defendant's representations that he fully accepts responsibility for his actions. In addition, when presented with the opportunity to apologize to the many victims of his crimes at the hearing on [these] motion[s], the defendant declined to do so. The court finds that the

defendant has not demonstrated sincere regret for the crimes he has committed.''

Our Supreme Court has held that, despite the broad discretion afforded to a trial court at sentencing, "the [a]ugmentation of [a] sentence based on a defendant's decision to stand on [his or her] right to put the [g]overnment to its proof rather than plead guilty is clearly improper." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 758, 91 A.3d 862 (2014). The court has explained that, "[a]lthough *a court may deny leniency* to an accused who . . . elects to exercise a statutory or constitutional right, a court *may not penalize* an accused for exercising such a right by increasing his or her sentence solely because of that election." (Emphasis added; internal quotation marks omitted.) Id., 762; see also *State* v. *Angel M.*, 337 Conn. 655, 678, 255 A.3d 801 (2020) ("there is a meaningful difference between increasing a sentence solely on the basis of the exercise of a constitutional right and denying leniency for invoking that right and declining to accept responsibility"). Notwithstanding the defendant's claim to the contrary, the court, in denying the defendant's requested sentence modification, neither punished him nor increased his sentence as a result of his exercising his constitutional and statutory rights to challenge his convictions. At issue in the present case is the court's denial of the defendant's request for a sentence modification, which, in effect, was a request for leniency. See *State* v. *Roman*, 335 A.3d 782, 785 (R.I. 2025) ("[a] motion to reduce a sentence . . . is essentially a plea for leniency" (internal quotation marks omitted)); see also *United States* v. *Moritz*, Docket No. 96-1612, 1997 WL 216211, *3 (2d Cir. April 29, 1997) (decision without published opinion, 112 F.3d 506) (same); *Shakur* v. *United States*, 44 F. Supp. 3d 466, 474 (S.D.N.Y. 2014) (same); *State* v. *Wallette*, 27 N.W.3d 441 (N.D. 2026) (same); *State* v. *Carrasco*, 566 P.3d 474, 477 (Idaho App. 2025) (same). Thus, the court's denial of the requested sentence modification was a denial of leniency, not a punishment. In his sparse briefing of this issue, the defendant has failed

to demonstrate an abuse of discretion by the trial court. We, therefore, reject this argument.

## III

The defendant next argues that the court erred because it "placed undue emphasis" on static factors such as the seriousness of the underlying offenses and the defendant's criminal history and "overlooked mitigating evidence" supporting his motion, including the letters of support from family, which showed his "strong support system and his potential to lead a productive life upon release." Our analysis of these arguments requires little discussion. First, in making these arguments, the defendant is essentially reformulating his first argument, which challenged, without supporting authority, the court's weighing of the various factors. See *State* v. *Brelsford*, supra, 227 Conn. App. 63. As we stated in part I of this opinion, the court "reasonably considered all of the information before it and determined that the defendant failed to establish good cause to modify his sentence after weighing the various factors concerning the defendant's rehabilitation, sobriety, familial relationships and support system, his extensive criminal history and behavior while incarcerated, the serious nature of the crimes of which he was convicted, and the impact of the defendant's crimes on the victims, law enforcement personnel and Dingwall's widow and children." As we also indicated in part I of this opinion, the court did not "overlook" the "mitigating evidence" of the letters that were submitted by the defendant but, rather, considered that information and determined that it was outweighed by the gravity of the defendant's conduct[13] and its continuing effect on the victims, as well

---

[13] We find no merit to the defendant's contention that, by taking into consideration the seriousness of his conduct and past criminal history, the court engaged in a "backward-looking" analysis, which he contends this court has cautioned against in *State* v. *Brelsford*, supra, 227 Conn. App. 53. This court did not suggest in *Brelsford* that consideration of the severity of a defendant's case is "backward-looking" or inappropriate. Indeed, in *Brelsford*, this court upheld the trial court's denial of the defendant's motion for a sentence modification in part because of

as the defendant's extensive criminal history. See *State* v. *Dupas*, supra, 291 Conn. 785 (trial court "ultimately considered the 'heinous nature of [the defendant's] crime and the [defendant's] involvement,' *to be the determining factor* in denying the defendant's motion for modification of his sentence," and "[i]t was not an abuse of discretion for the court to rely on the horrific nature of [the] crime in denying the defendant's motion for modification" (emphasis added)). Accordingly, these arguments fail.

The judgments are affirmed.

In this opinion the other judges concurred.

---

the severity of the case. *State* v. *Brelsford*, supra, 62; see id. ("[T]he defendant contends that the court improperly relied solely on the severity of the defendant's offense when denying his modification. The court's decision, *which plainly reflects that it weighed several factors*, belies that contention and does not merit further discussion." (Emphasis added.)); see also *State* v. *Martin G.*, supra, 222 Conn. App. 406 ("the court conducted an appropriate review of the information before it and determined that the gravity of the defendant's conduct, and its continuing effect of the victim and her family, outweighed the rehabilitative efforts he has undertaken since his incarceration").